**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ERIC F. HARTMAN, | Case No.  5:25-cv-09816-BLF |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| KOSHY P. GEORGE, et al., | [Re:  ECF No. 32] |
| Defendants. | |

Plaintiff Eric Hartman, an attorney proceeding pro se, asserts various claims against his neighbors Koshy George and Lynn Kuehn, California state senator Dave Cortese, Santa Clara Superior Court Judge Evette Pennypacker, Santa Clara Assistant District Attorney Vincent Doctor, and the County of Santa Clara.  ECF No. 23 ("Compl.").  Mr. George, Ms. Kuehn, Senator Cortese, and Judge Pennypacker (together, the "Moving Defendants") move to dismiss the first amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 32 ("Mot."); ECF No. 42 ("Reply").  Mr. Hartman opposes the motion.  ECF No. 41 ("Opp.").  The Court heard oral argument on April 9, 2026.  *See* ECF No. 55.

For the reasons stated on the record and set forth below, the motion is GRANTED.

## I.   BACKGROUND

Mr. Hartman's complaint is quite difficult to follow but appears to be based on a series of state court actions related to lawsuits Mr. Hartman filed against Mr. George and Ms. Kuehn to "legally abate and enjoin" Mr. George from "endanger[ing] the lives and safety of children and others" through his "unlawful Business Practices acting as a Certified Public Accountant."  Compl. ¶¶ 34–35, 38.  The complaint names three lawsuits (eventually consolidated and presided over by Judge Pennypacker), initiated by Mr. Hartman in Santa Clara County Superior Court:

(1) *Hartman v. George*, No. 21CV390666 (filed Nov. 1, 2021), (2) *Hartman v. George*, No. 23CV413568 (filed Apr. 5, 2023), and (3) *Hartman v. George*, No. 23CV427904 (filed Dec. 20, 2023).  *Id.* ¶ 35.  The complaint is loosely structured around two groups of allegations, to wit, (1) instances of private wrongdoing by Mr. George and Ms. Kuehn ("Private Defendants"), and (2) a conspiracy to deprive Mr. Hartman of impartial access to the law initiated by the Private Defendants but carried out by Judge Pennypacker and Senator Cortese in their official capacities ("State Defendants").

With respect to the private wrongdoing allegations, Mr. Hartman appears to reassert many of the same claims he previously asserted against the Private Defendants in state court.  The complaint alleges that Mr. Hartman initiated an action against the Private Defendants to "enjoin" them from various unspecified "unlawful business practices . . . directly harming the public safety," after which they "retaliated [against him] by actual violence and threats of violence."  Compl. ¶¶ 34–36.  The complaint proceeds to enumerate seventeen separate, purportedly non-exhaustive examples of retaliatory wrongdoing by the Private Defendants, including trespassing on Mr. Hartman's property, taking down his signs, verbally threatening him, and physically attacking him.  *See id.* ¶ 36.

With respect to the government conspiracy allegations, Mr. Hartman alleges that, over the course of his state court actions against the Private Defendants, the State Defendants "became *Bias* [sic] and *no longer impartial* in their legal capacities towards plaintiff Hartman thus depriving [him] under Color of Law of his Constitution [sic] Right to a Fair Hearing before an Impartial Judge and also a Fair Prosecution/Prosecutor."  Compl. ¶ 45 (emphasis and capitalization in original).  Mr. Hartman avers that evidence of the "[c]rimes against governmental authority [sic] . . . evidencing disqualifying bias or prejudice and lack of impartiality" is set forth in exhibits 15 and 16 attached to the complaint.  *Id.* ¶¶ 45–47.  The thrust of the allegations set forth in the complaint is that Senator Cortese improperly contacted Judge Pennypacker regarding Mr. Hartman's conduct toward Mr. George (i.e., Senator Cortese's constituent) and that Judge Pennypacker engaged in "stealing cases" by consolidating the state court lawsuits that Mr. Hartman filed.  *Id.* ¶¶ 53, 61.

2

Exhibit 15 apparently depicts Mr. George's "unlawful . . . April 23, 2025[,] email . . . entreating Legislative Branch – State Senator Dave Cortese to entreat adverse Judicial Action Against Hartman" by complaining about Mr. Hartman's conduct.  Compl. ¶ 47; *see also id.* Ex. 15.  Exhibit 16 apparently depicts an email from Senator Cortese's staff to Judge Pennypacker's staff regarding "contact[] by a constituent . . . indicating difficulties with his next door neighbor," which, "[o]ut of an abundance of caution, and to avoid any concern of ex parte communications, [Judge Pennypacker] . . . forward[ed] . . . to the parties."  *Id.* Ex. 16. Mr. Hartman alleges that, when he asked Judge Pennypacker "about this *Ex Parte Communication* [she] shouted '*I will not discuss it*[.]'"  Compl. ¶ 67.

Mr. Hartman filed an initial complaint against the Moving Defendants—as well as Mr. Doctor, Santa Clara County, and the Santa Clara County District Attorney's Office—on November 14, 2025.  ECF No. 1.  Mr. Hartman filed the first amended complaint on December 31, 2025, asserting claims for (1) violation of the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1 ("Bane Act"), *see* Compl. ¶¶ 29–43; (2) deprivation of his state and federal constitutional rights, *see id.* ¶¶ 44–72; and (3) injunctive relief prohibiting certain nonmoving Defendants from bringing state criminal charges against him, *see id.* ¶¶ 73–75.  The first and second claims were asserted against the Moving Defendants and Mr. Doctor, and the third claim was asserted against Mr. Doctor and the Santa Clara County District Attorneys' Office (now dismissed, *see* ECF No. 54).  Mr. Doctor and Santa Clara County were only recently served, and thus their time to respond to the complaint has not yet expired.

## II.    LEGAL STANDARDS

### A.  Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction tests whether a complaint alleges grounds for federal subject matter jurisdiction.  "A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment."  *Smith v. McCullough*, 270 U.S. 456, 459 (1926).  A jurisdictional challenge may be facial or factual.

*Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004).  In evaluating a facial attack, the Court determines whether the allegations contained in the complaint, taken as true, are sufficient on their face to invoke federal jurisdiction.  In evaluating a factual attack, the existence of disputed material facts does not preclude the Court from evaluating for itself the merits of jurisdictional claims.  *See Warth v. Seldin,* 422 U.S. 490, 501 (1975); *Safe Air for Everyone,* 373 F.3d at 1039.

### B.  Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A defendant may move to dismiss an action pursuant to Rule 12(b)(6) for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678).

### C.  Rule 15(a)

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend.  Although Federal Rule of Civil Procedure 15(a) gives the trial court discretion over this matter, the Ninth Circuit has explained that leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (first alteration in original) (first quoting Fed. R. Civ. P. 15(a), then quoting *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987)).  "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that

4

the complaint could not be saved by amendment." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In deciding whether to grant leave to amend, the Court considers the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital*. The Ninth Circuit in *Eminence Capital* identified several factors to consider, including (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. 316 F.3d at 1052.

### III.    REQUEST FOR JUDICIAL NOTICE

Defendants filed a request for judicial notice concurrently with their motion to dismiss, requesting that the Court take judicial notice of Mr. Hartman's pleadings and other court records in the three state court actions described above (i.e., No. 21CV390666, No. 23CV413568, and No. 23CV427904) and one restraining order application and the appeal therefrom. *See* ECF No. 32-1. Mr. Hartman opposes the request, urging that Defendants "should not attach Affidavits, evidence or other extrinsic materials to the Motion" and that the Court cannot consider such documents without converting the motion to dismiss into a motion for summary judgment. ECF No. 40.

The Court may take judicial notice of documents referenced in the complaint, as well as matters in the public record. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds*, *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). In addition, the Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records, including judgments and other court documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

While Mr. Hartman is correct that a district court generally may not consider any material

beyond the pleadings in ruling on a Rule 12(b)(6) motion, the Court may take judicial notice of documents referenced in the complaint, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment. . *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); *Nevarez v. Sumavision SFO LLC*, No. 17-cv-03137-BLF, 2018 WL 827969, at *2 (N.D. Cal. Feb. 12, 2018).  Moreover, "[u]nder the incorporation by reference doctrine, courts may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Laatz v. Zazzle, Inc.*, No. 22-cv-04844-BLF, 2024 WL 1023849, at *3 (N.D. Cal. Mar. 7, 2024) (second alteration in original) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)).

Defendants' requests for judicial notice are GRANTED because the documents are public documents whose accuracy Mr. Hartman does not (and cannot) challenge.  *See Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998–99 (9th Cir. 2010) (granting judicial notice of information contained on a government website); *Lee*, 250 F.3d at 688–89.  This grant is limited to the existence of these documents; the Court does not judicially notice the assertions of fact contained therein for their truth unless stated otherwise.  *See Khoja*, 899 F.3d at 999.

## IV.    DISCUSSION

The State Defendants move to dismiss pursuant to Rule 12(b)(1), asserting that the Court lacks subject matter jurisdiction over Mr. Hartman's first and second claims against them because they are barred by the Eleventh Amendment.  Mot. at 5–8.  Senator Cortese also argues that the claims against him are barred because he is entitled to qualified immunity.  *See id.* at 8–10.

All Moving Defendants also move to dismiss pursuant to Rule 12(b)(6).  Judge Pennypacker argues that the claims against her are barred by absolute judicial immunity.  Mot. at 11–13.  Senator Cortese argues that the complaint fails to sufficient factual allegations to state a claim against him.  *Id.* at 13–14.  The Private Defendants argue that the claims against them are barred by res judicata because of the disposition of the parallel state court lawsuits against them and are also barred by the statute of limitations.  *Id.* at 14–15.

### A. State Defendants

Mr. Hartman's second cause of action under 42 U.S.C. § 1983 and the California

United States District Court
Northern District of California

Constitution alleges that the State Defendants, while acting under color of law, deprived Mr. Hartman of his rights under the Fifth and Fourteenth Amendments of the U.S. Constitution and Article I, sections 7 and 15 of the California Constitution. Compl. ¶ 44. Mr. Hartman also appears to more broadly allege some sort of vague structural offense committed by the State Defendants, complaining that they have violated separation-of-powers principles by conspiring against him. *See id.* ¶¶ 52–60. While the complaint asserts that the first cause of action for violation of the Bane Act is also asserted against the State Defendants, the only invocation of the State Defendants is the allegation the Private Defendants caused the State Defendants to deprive Mr. Hartman of "a Fair Hearing before an impartial Judge" and "a Fair Hearing and Impartial Prosecutor," which is essentially a restatement of his second cause of action. *Id.* ¶ 37 (emphasis omitted).

The State Defendants argue that the Court lacks subject matter jurisdiction over the claims against them by operation of the Eleventh Amendment's bar on suits seeking "damages or injunctive relief against a state, an arm of the state, its instrumentalities, or its agencies, including state superior courts and judicial officers who are sued in their official capacities." Mot. at 5–6. In essence, the State Defendants argue that Mr. Hartman's claims against them are in substance unconsented claims against the state of California because they are wholly based on alleged actions undertaken by Judge Pennypacker in her official capacity as a state court judge and Senator Cortese in his official capacity as a state legislator. *Id.* at 6. In opposition, Mr. Hartman does not address the issue of state sovereign immunity, instead "ask[ing] this Court to disregard and deny this erroneous FRCP 12(b)(1) erroneously based on the Affirmative Defense of Sovereign Immunity . . . because FRCP 12(b)(1) is based solely on . . . Diversity of citizen [sic]." Opp. at 3 (internal quotation marks and emphasis omitted). Mr. Hartman's argument appears to be based on his apparent belief that an assertion of state sovereign immunity cannot be raised in a Rule 12(b)(1) motion.

"The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995). The Eleventh Amendment's grant of sovereign immunity bars

United States District Court
Northern District of California

United States District Court
Northern District of California

monetary relief against state entities and extends to individual defendants acting in their official capacities. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992). There are three exceptions to the Eleventh Amendment bar. *See Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817 (9th Cir. 2001). "First, a state may waive its Eleventh Amendment defense." *Id.* "Second, Congress may abrogate the States' sovereign immunity by acting pursuant to a grant of constitutional authority." *Id.* "Third, under *the Ex parte Young* doctrine, the Eleventh Amendment does not bar a 'suit against a state official when that suit seeks . . . prospective injunctive relief.'" *Id.* at 817–18 (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996)).

As a preliminary matter, the Court cannot accept Mr. Hartman's invitation to simply disregard the State Defendants' assertion of state sovereign immunity, as it is a "threshold jurisdictional issue" that the Court must decide before considering the merits of Mr. Hartman's claims. *Munoz v. Sup. Ct. of Los Angeles*, 91 F.4th 977, 981 (2024). The Court accordingly must determine whether the State Defendants have been sued as arms of the state and are immune from suit under the Eleventh Amendment. It is apparent from the face of the complaint, whose theory of wrongdoing is entirely based on the State Defendants' official actions, that claims against Judge Pennypacker and Senator Cortese must be dismissed.

The fact that the complaint purports to name the State Defendants in their "individual capacity," *see* Compl. ¶ 10, does not change this outcome. *See Barrilleaux v. Mendocino Cnty.*, 61 F. Supp. 3d 906, 915 (N.D. Cal. 2014) (explaining that "[w]hether a claim is an official capacity claim or a personal capacity claim depends on whether the true target of the action is the state, or state policies, or an individual's conduct"). As to Judge Pennypacker, the allegations of "Judicial Obstruction of Justice" are all based on Judge Pennypacker's actions in her official capacity as the judge presiding over his state court actions. Compl. ¶ 52; *see also id.* ¶¶ 61–63 (alleging that Judge Pennypacker improperly consolidated cases), ¶ 64 (complaining about Judge Pennypacker's conduct during a case management conference), ¶¶ 65–67 (alleging that Judge Pennypacker violated the California Code of Judicial Ethics). As to Senator Cortese, the only allegation in the complaint—namely, that a member of his staff forwarded an email inquiry from a

United States District Court
Northern District of California

constituent—falls squarely within the heartland of his official duties as a state senator.  *See id.* ¶ 47.

The Court has no trouble in concluding that the claims asserted against the State Defendants are "no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Mr. Hartman does not contend that any exception to the Eleventh Amendment applies, and the Court has no reason to conclude otherwise.  There is no indication that either Congress or the state of California has affirmatively consented to suit.  *See, e.g., Riggle v. California,* 577 F.2d 579, 585–86 (9th Cir. 1978).  And, to the extent that Mr. Hartman seeks injunctive relief against Judge Pennypacker, *see* Compl. ¶ 72, the *Young* exception is not applicable to the relief he requests.  The Supreme Court has recently reaffirmed the general principle that federal courts are not normally permitted "to issue injunctions against state-court judges or clerks," admonishing that "an injunction against a state court" or its "machinery" "would be a violation of the whole scheme of our Government."  *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021).  The relief that Mr. Hartman seeks, which would amount to nothing less than displacing Judge Pennypacker's control over managing her own docket and case management system, is not only absurd but squarely outside of the scope of the *Young* exception.

The Court also notes that Judge Pennypacker is entitled to absolute judicial immunity as to the claims asserted against her.  The Supreme Court has long explained that "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in [her], shall be free to act upon [her] own convictions, without apprehension of personal consequences to [her]self."  *Bradley v. Fisher*, 80 U.S. 335, 347 (1871).  Section 1983 does not create liability against judges acting in a judicial role, even if they are alleged to have acted unconstitutionally.  *Pierson v. Ray*, 386 U.S. 537, 553–54 (1967).

All of Mr. Hartman's allegations against Judge Pennypacker are based on her official court rulings and related actions while presiding over matters in which he was a party.  This deficiency is not cured by the complaint's conclusory assertion that Judge Pennypacker "was not performing a Judicial Act . . . no[r] a normal function performed by a judge."  Compl. ¶ 27.  On the contrary, the acts complained of—consolidating civil cases and cancelling a trial date—are part of a judge's

duties to manage court proceedings and are matters within the judge's discretion. Mr. Hartman's allegations as to Mr. George's email to Senator Cortese are also barred, since there is nothing wrong with forwarding the email to the Parties "[o]ut of an abundance of caution[] and to avoid any concern of ex parte communications." Compl. Ex. 16. In any event, "judicial immunity is not overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

Finally, to the extent that the Court construes the complaint as pleading a Bane Act violation against the State Defendants—which would not be barred by operation of the Eleventh Amendment—any such claim has not properly been pleaded and is also subject to dismissal. On this score, Mr. Hartman does not allege compliance with the Government Claims Act, which requires any claim against a public entity or its employees "for injury to person" to be presented to the public entity within six months of the injury. Cal. Gov't Code § 911.2(a). Any claim not barred by the Eleventh Amendment is accordingly still subject to dismissal. *Miller v. Adonis*, No. 12-cv-353, 2019 WL 4076441, at *18 (E.D. Cal Aug. 29, 2019) (finding dismissal of Bane Act claim for failure to comply with the Government Claims Act proper); *accord State of California v. Sup. Court*, 32 Cal. 4th 1234, 1240 (2004) ("California statutes or ordinances which condition the right to sue the sovereign upon timely filing of claims and actions are . . . *elements of the plaintiff's cause of action* and conditions precedent to the maintenance of the action." (internal citation omitted)). Mr. Hartman has not advised the Court that he actually filed a timely government tort claim.

The Court accordingly GRANTS the motion as to Judge Pennypacker and Senator Cortese. Because amendment would be futile, dismissal as to Judge Pennypacker and Senator Cortese will be without leave to amend.

## B. Private Defendants

Mr. Hartman's first cause of action for violation of the Bane Act is based on the Private Defendants allegedly "retaliate[ing] by actual violence and threats of violence against Plaintiff Hartman" for having filed state law actions against them "to legally abate and enjoin the . . . continuing conspiratorial endangerment of public and private safety" caused by (from what the Court can gather) Mr. George's activities as a Certified Public Accountant. Compl. ¶¶ 34–36.

10

Mr. Hartman further asserts that the Private Defendants' alleged wrongful acts (e.g., trespass, assault, attempted murder, verbal threats, vandalism, online harassment, attempted theft, solicitation) constitute violations of state law entitling Mr. Hartman to "compensatory and punitive damages." *Id.* ¶¶ 40–42. While Mr. Hartman's second cause of action under § 1983 and the California Constitution is asserted against the Private Defendants, the only allegation relating to them is that Mr. George is partially responsible for the alleged governmental conspiracy by virtue of complaining about Mr. Hartman to Senator Cortese.

The Private Defendants argue that all the allegations asserted against them (except for Mr. George writing to Senator Cortese, which Mr. Hartman characterizes as "criminal embracery") have been litigated against him in state court and furthermore, are barred by California's two-year statute of limitations for intentional torts. Mot. at 12–14 (citing ECF No. 32-1, Compl. ¶¶ 35–36, Cal. Code Civ. Pro. § 335.1). Turning to Mr. Hartman's criminal embracery allegation against Senator Cortese, the Private Defendants argue that there is no allegation of bribery contained in the complaint. *Id.* at 15. Mr. Hartman does not meaningfully contest any of this, instead renewing his argument that the Court may not take judicial notice of his state court pleadings and appellate affirmance sustaining the demurrer thereof and that the Moving Defendants may not jointly move for dismissal in a single motion. Opp. at 8–9.

"The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* Under the related doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* As the Supreme Court has recognized, "res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.*

The application of res judicata is apparent from a side-by-side comparison of the state court filings submitted in Defendants' request for judicial notice, of which the Court takes judicial

11

notice. As the Court explained at the hearing and *supra*, the Court disagrees with Mr. Hartman's contention that it must convert this motion to a motion for summary judgment. *See also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."). The Ninth Circuit has explained that res judicata applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties. *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010) (internal quotation marks and citation omitted).

With respect to the first factor, there clearly is an identity of claims, as the complaint here makes nearly identical allegations to the earlier state court complaints. With respect to the second factor, the Sixth Appellate District Court of Appeals sustained the demurrer order and dismissal of those claims, which is sufficient for res judicata purposes. *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005); *see also Vitalich v. All. Bancorp*, No. 16-cv-06231-BLF, 2017 WL 4224679, at *2–4 (N.D. Cal. Sept. 22, 2017). Finally, with respect to the third factor, there is an identity of parties as to all defendants. Based on the foregoing analysis, the Court concludes that the claims against the Private Defendants are barred by res judicata. Even if the claims were not barred by res judicata, dismissal is warranted because the allegations, *see* Compl. ¶ 36, date back to 2021 and 2022. Cal. Code Civ. Pro. § 335.1 ("Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another"); *see also Wilson v City of Oakland*, No. 11-cv-05377-DMR, 2012 WL 669527, at *3 n.6 (N.D. Cal. Feb. 29, 2012) (explaining that Bane Act claims "arising out of common law neglect or personal injury" are subject to two-year statute of limitations).

As to criminal embracery, which is alleged to have occurred in 2025, the statute Mr. Hartman relies on states a criminal offense for bribing a juror, arbitrator or referee. *See* Cal. Penal Code § 95. There is no allegation of a bribe—on the contrary, the sole allegation is that Mr. George contacted his local state representative about his concerns, as is First Amendment Right. Mr. Hartman fails to state a claim. Finally, to the extent that Mr. Hartman characterizes any of the conduct of the Private Defendants as official actions carried out in a deputized role as state actors, *see* Compl. ¶ 22, he provides no factual allegations establishing their authority to act

12

as such.  In any case, a claim predicated on that theory would be barred under the Eleventh Amendment for the reasons described *supra* or subject to a timely government tort claim.

The Court accordingly GRANTS the motion as to Mr. George and Ms. Kuehn.  Because the Court finds that amendment would be futile, dismissal as to Mr. George and Ms. Kuehn will be without leave to amend.

**V.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The motion is GRANTED.

(2) All claims against the Moving Defendants (i.e., Mr. George, Ms. Kuehn, Judge Pennypacker, and Senator Cortese are DISMISSED).  The Court will terminate the Moving Defendants from this case and enter judgment in their favor.

(3) This order terminates ECF No. 32.

Dated:  April 13, 2026

_____

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California